United States District Court
Southern District of Texas
**ENTERED**
February 08, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN BALENTINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-00466 |
| | § | |
| GREG ABBOT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

In 1999, a Texas jury found John Lezell Balentine guilty of capital murder. For nearly twenty-four years, Balentine has challenged his conviction and death sentence in state and federal court. Barring judicial intervention, the State of Texas will carry out Balentine's execution tonight, **February 8, 2023**. Now, only hours before his execution, Balentine has filed a civil-rights lawsuit pursuant to 42 U.S.C. § 1983. (Docket Entry No. 1).

Balentine sues Texas Governor Greg Abbott, Texas Department of Criminal Justice officials, and members of the Texas Board of Pardons and Paroles ("the Board"). In his lawsuit, Balentine alleges that recent actions in the state courts have denied him full access to Texas' clemency process. As discussed below, Balentine's complaint alleges that the withdrawal, and later reinstatement, of his execution date has either completely denied him access to clemency or has made it so rushed as to be ineffectual. On that basis, Balentine requests a stay of his execution. (Docket Entry No. 3).

Since Balentine filed this lawsuit, his petition for clemency has been denied. For the reasons discussed below, the Court will deny Balentine's motion for a stay.

**I.      Background**

In April 1999, Balentine was convicted of capital murder and sentenced to death for the shooting deaths of three teenage boys while they slept. *State v. Balentine*, No. 39,532-D (320th Dist. Ct., Potter Cnty., Tex. April 19, 1999). The Texas Court of Criminal Appeals affirmed his conviction and sentence on direct appeal. *Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002). Since then, Balentine has extensively, but unsuccessfully, pursued post-conviction relief in both state and federal court, with no court seriously questioning the integrity of his conviction. *See generally Ex parte Balentine*, Nos. 54,071-01 through -03 (Tex. Crim. App.); *Balentine v. Lumpkin*, No.18-70035, 2021 WL 3376528 (5th Cir. 2021) (detailing Balentine's procedural history).

The circumstances leading up to this lawsuit spring from Balentine's state-court challenge to his death warrant. Article 43.15 of the Texas Code of Criminal Procedure explicitly authorizes a trial court to enter an order setting a date for an execution. On September 1, 2022, the 230th District Court of Potter County, Texas, entered a death warrant scheduling Balentine's execution for February 8, 2023. Tex. Code Crim. Pro. article 43.141 provides certain requirements for notice of the execution. Balentine has argued in state court that the relevant procedures were not followed. On January 11, 2023, Balentine filed a "Motion to Recall Order Setting an Execution Date and Warrant of Execution" in his trial court (the 320th District Court for Potter County, Texas). Balentine's motion raised technical complaints about the delivery of his death warrant. The precise concerns Balentine raised are not at issue in this lawsuit. The results of his litigation, however, have led to Balentine's concerns about the clemency process.

While litigating technical questions about his death warrant, Balentine prepared for his execution. Aside from raising various issues in state court, Balentine sought clemency. The

Governor of Texas, based on a recommendation of Board, may grant clemency. Tex. Const., Art. IV, § 11; Tex. Code Crim. Pro. art. 48.01. Under Texas procedure, an inmate facing execution may file a written application for a "reprieve from execution" or "commutation of death sentence to a sentence of life imprisonment . . . not later than the twenty-first calendar day before the execution is scheduled." 37 Tex. Admin. Code § 143.43(a), 143.57(b). The Board then makes a non-binding recommendation to the Governor. The State of Texas Constitution grants to the Governor the sole power of granting clemency. Tex. Const., Art. IV, § 11.

On January 17, 2023, Balentine submitted his application for commutation of his death sentence. Ten days later, the Board scheduled a vote to take place on February 6, 2023. The vote, however, would not take place when scheduled. On January 31, 2023, the trial court entered an Amended Order Recalling Execution Date and Warrant of Execution. The State filed a motion to reconsider the next day which the trial court denied. According to Balentine's complaint, the withdrawal of the execution date has led to some confusion among State actors.

Balentine's complaint alleges that TDCJ officials informed Balentine that his execution would not proceed, but soon thereafter placed him on "death watch" again. TDCJ removed his scheduled execution from his website. And Balentine received notice on February 1, 2023, that "given the withdrawal of his execution warrant, 'the Board has discontinued their consideration of recommending to the Governor a Commutation of Death Sentence to Lesser Penalty.'" (Docket Entry No. 1 at 8).

During this time, however, the State challenged the withdrawn execution date in the Texas Court of Criminal Appeals through a writ of mandamus. Earlier this morning, the Court of Criminal Appeals entered an order holding "grant[ing] mandamus relief and reinstat[ing] the execution order and warrant." *In re State of Texas ex rel. Randal Sims*, No. WR-94,538-01 (Tex.

Crim. App. Feb. 8, 2023). Hours later, Balentine filed his lawsuit.

## II.   Balentine's Complaint

When Balentine brought this lawsuit, the Board had not yet voted on his clemency petition. Balentine assumed that any vote before his execution would be rushed and involve inadequate consideration. Balentine bases much of his complaint on characterizing the Court of Criminal Appeals' order today as "rescheduling" his execution. With that framing, Balentine's arguments travel two paths. First, he complains that conducting his execution immediately after "rescheduling" would deny him the full time allowed by Texas administrative law for consideration of clemency. Second, Balentine alleges that, whether or not the Board could vote in the few hours remaining before his execution, the process would be arbitrary, capricious, and unfair. The Defendants concisely summarize: "Balentine argues he was deprived of the due process of law because the Board's temporary cessation of consideration of his clemency petition is contrary to Texas law and the Board's purportedly truncated consideration of his clemency petition rendered the Board's decision arbitrary." (Docket Entry No. 5 at 13).

Balentine's complaint contains two claims:

(1)   the Board has violated Due Process and the Eighth Amendment in failing to adequately consider Mr. Balentine's application for commutation of death sentence.

(2)   the board has violated Due Process and the Eighth Amendment in failing to adequately consider Mr. Balentine's application for a reprieve of his execution date.

Given the short time remaining, this litigation can only go forward if the Court stays Balentine's execution. To that end, Balentine seeks a stay and an injunction that would prevent the State

> from executing him at any time until and unless (1) the Board complies with Texas law and regulations by providing the full, continuous, uninterrupted 21-day time

period for consideration of Mr. Balentine's request for commutation of his death sentence; (2) the Board complies with Texas law and regulations by providing the full, continuous, uninterrupted 21-day time period for consideration of Mr. Balentine's request for a reprieve of his execution; and (3) the Board complies with all other applicable laws and regulations in considering and deciding Mr. Balentine's clemency requests.

(Docket Entry No. 3 at 6). The Defendants opposed any stay or injunction. (Docket Entry No. 5).

### III. Stay of Execution

The Court finds that Balentine has not shown that he is entitled to a preliminary injunction or a stay of execution. A federal court has inherent discretion when deciding whether to stay an execution. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). "[A] stay of execution is an equitable remedy, and an inmate is not entitled to a stay of execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). In deciding whether to issue a stay of execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *See Nken*, 556 U.S. at 425-26.[1] "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S at 584.

---

[1] When inmates file motions requesting a preliminary injunction, a TRO, and a stay of execution, courts generally consider all the requests under either the preliminary-injunction or stay-of-execution standard. *See Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016); *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014). The requirements for a preliminary injunction are substantially similar to those for a stay of execution. *See Sells*, 561 F. App'x at 344.

A.  **Showing of Success on the Merits**

Balentine has failed to meet his burden under the first *Nken* factor. Of the stay-of-execution factors, the likelihood of success is often "the most critical." *Nken*, 556 U.S. at 434. Courts describe the movant's burden as requiring a "strong" or "substantial" likelihood of success. *See In re Garcia*, 756 F. App'x 391, 396 (5th Cir. 2018); *Sells v. Livingston*, 561 F. App'x 342, 343 (5th Cir. 2014); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013). Balentine has not met that burden.[2]

Balentine's complaint relies on showing a constitutional violation in the Board's consideration of his clemency petition. The Supreme Court has recognized that "'[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted.'" *Harbison v. Bell*, 556 U.S. 180, 192 (2009) (quoting *Herrera v. Collins*, 506 U.S. 390, 411-12 (1993) (footnote omitted)). Yet the Constitution "does not require the States to enact a clemency mechanism." *Herrera v. Collins*, 506 U.S. 390, 414 (1993). Simply, no constitutional entitlement to clemency exists. *See Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) ("[A]n inmate has 'no constitutional or inherent right' to commutation of his sentence." (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)); *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280-82 (1998) (applying *Dumschat*'s reasoning to a death row inmate's petition for clemency). As

---

[2] As an initial matter, Balentine concedes that he has not exhausted the allegations in his complaint through the state process. Even capital inmates challenging their imminent execution "must exhaust available remedies" before they bring suit. *Nelson v Campbell*, 541 US 637, 650 (2004); *but see Murphy v Collier*, 942 F3d 704, 709 (5th Cir 2019) (refusing to vacate stay because Supreme Court had implicitly rejected exhaustion defense). Requiring inmates to exhaust remedies through any available state process "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v Seal*, 702 F3d 785, 788 (5th Cir 2012). Balentine's failure to seek any relief through the state administrative or judicial process is a sufficient basis to dismiss his complaint.

such, the judiciary has a "narrow role in the uniquely executive task of considering clemency[.]" *Tamayo v. Perry*, 553 F. App'x 395, 402 (5th Cir. 2014).[3]

The Fifth Circuit has held that Texas' clemency procedure generally complies with due process requirements. *See Faulder v. Texas Board of Pardons and Paroles*, 178 F.3d 343, 344-45 (5th Cir. 1999). Balentine contends that his execution should not proceed until the Board has a full twenty-one-day period, uninterrupted by other events, to consider his clemency petition in compliance with all application regulations. But the law does not place this Court in the position of being the arbitrator of the State's clemency review. The Supreme Court has only suggested that the Constitution provides "minimal procedural safeguards" for capital clemency proceedings. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part and concurring in judgment). "But these requirements really are *minimal*[.]" *Turner v Epps*, 460 F Appx 322, 331 (5th Cir 2012). One Supreme Court Justice has explained that these protections only prevent clemency from becoming so capricious as to involve "a state official flipp[ing] a coin to determine whether to grant clemency." *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring in part and concurring in judgment). Thus, irregularities in the clemency process do not constitute a violation of an inmate's due process rights. Micromanaging the clemency process through the federal due process clause "would conflict with a long line of Supreme Court decisions holding that a violation of state procedural law does not itself give rise to a due process claim." *Gissendaner v. Comm'r, Ga. Dept of Corr.*, 794 F.3d 1327, 1333 (11th Cir. 2015) (citing cases).

---

[3] "[C]lemency [is] a prerogative granted to executive authorities . . . . It is not for the Judicial Branch to determine the standards for this discretion." *Cavazos v. Smith*, 565 U.S. 1, 9 (2011). "If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention." *Id*. Clemency officials typically have "complete discretion" to commute a defendant's sentence based on "a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 278 (1998).

The case does not exhibit the extreme "flip-of-the-coin" situation which may result in a due process violation. The circumstances placed Balentine's clemency process into a unique and difficult posture. But "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). Even when "the Board . . . violate[s] state law and its own regulations" it does not fall outside "minimal procedural safeguards" for which there may exist a constitutional protection. *Faulder v. Texas Board of Pardons and Paroles*, 178 F.3d 343 (5th Cir. 1999); *see also Garcia v. Jones*, 910 F.3d 188, 191 (5th Cir. 2018) (finding no constitutional violation based on the composition of the Board); *Tamayo v. Perry*, 553 F. App'x 395, 402 (5th Cir. 2014) (holding no procedural due process violation where Board members allegedly communicated with interested parties in violation of the Board's own rules).

Balentine presented the Board with a clemency application. The Board voted on that application and denied it. He was not denied access to the process. *See Fleming v. Upton*, 745 F. App'x 544, 545 (5th Cir. 2018) ("However, Fleming was able to file an application for clemency, which was considered; she was not denied access to the process"); *Turner v. Epps*, 460 F. App'x 322, 331 (5th Cir. 2012) (finding no "due process right to a more effective or compelling clemency application"). Balentine has not shown that the process did not comply with the minimal protections afforded by the Constitution. Accordingly, Balentine has not shown a substantial likelihood of success on the merits which would meet the first *Nken* factor for a stay or preliminary injunction to issue.

### B. Remaining *Nken* Factors

The remaining three *Nken* factors do not tip the scales in Balentine's favor. Generally, "the possibility of irreparable injury weighs heavily in the movant's favor" in a capital case. *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). Nevertheless, the United States Supreme Court has ruled that an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). The death penalty is irreversible, but there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)). Granting of a stay would harm the Defendants by disallowing the execution of an otherwise-valid judgment against Balentine in a timely manner. Finally, the public has an "in timely enforcement of the death sentence." *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020). The Court, therefore, finds that Balentine has not shown entitlement to a stay of his execution.

### IV. Conclusion

The Court finds that Balentine has not met the requirements for a stay of his execution. The Court, therefore, **DENIES** Balentine's motion for a stay and preliminary injunction. (Docket Entry No. 3). The Court **GRANTS** Balentine's pending motion to proceed *in forma pauperis*. (Docket Entry No. 2).

It is so ORDERED.

SIGNED at Houston, Texas, on this the 8th day of February, 2023.

Kenneth M. Hoyt
United States District Judge